* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission modifies in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant at all relevant times.
3. Constitution States Service Company is the third party administrator.
4. Plaintiff alleged on his Form 33 and defendant denied on their Form 33R that plaintiff suffered a worsened change of condition to his accepted back claim.
5. Plaintiff's average weekly wage was $1,246.82, yielding a compensation rate of $560.00 per week.
6. The issues before the Commission are whether plaintiff suffered a change of condition, and, if so, to what benefits he is entitled to recover from defendant; whether defendant overpaid total and/or partial disability compensation from May 2003 through August 2004, and, if so, whether they are entitled to a credit in benefits paid; and whether defendant is estopped from claiming a credit for such payments because evidence that Dr. Zuhosky released plaintiff to work without restrictions was known or readily available to defendant at that time.
7. At the hearing before the Deputy Commissioner, the parties stipulated into evidence the following:
 a. Stipulated exhibit # 1 — the Pre-Trial Agreement, as modified and initialed by the parties.
 b. Stipulated exhibit # 2 — medical records of plaintiff.
 c. Stipulated exhibit # 3 — Industrial Commission forms.
 d. Stipulated exhibit # 4 — payment log, and all wages and medical bills paid.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant as a long-distance truck driver. On January 1, 1999, plaintiff injured his low back in an admittedly compensable motor vehicle accident. Plaintiff was diagnosed with disc protrusions at L3-4 and L5-S1 and defendant provided plaintiff medical compensation. Defendant accepted plaintiff's January 1, 1999 compensable back injury pursuant to an Industrial Commission Form 60 dated November 16, 2000. Plaintiff received conservative pain management treatment from Dr. Robert Giedraitis, Dr. Joseph Zuhosky, Dr. Mark Romanoff, and Dr. David Cook for his injuries. He also received conservative treatment from Dr. Mark Hartman, an orthopedic surgeon.
2. For the past several years, Dr. Zuhosky has been plaintiff's authorized treating physician and has provided plaintiff pain management in the form of epidural injections and physical therapy. On February 4, 2003, Dr. Zuhosky assigned plaintiff work restrictions of no lifting more than 50 pounds, no pushing or pulling more than 25 pounds, and no bending, stooping or squatting.
3. In May 2003, defendant closed its Charlotte terminal. From May 2003 until October 2003, plaintiff worked with a vocational rehabilitation counselor provided by defendant. Defendant paid disability compensation to plaintiff during this period of time.
4. On April 22, 2003, Dr. Zuhosky released plaintiff to return to work with no restrictions as of May 13, 2003. On September 4, 2003, plaintiff returned to see Dr. Zuhosky with complaints of increased low-back pain, worse with sitting and lying down, and also pain with prolonged standing. On September 4, 2003, Dr. Zuhosky continued plaintiff's work status without any restrictions.
5. Defendant continued to pay plaintiff temporary total disability benefits until October 15, 2003, when plaintiff found a job as a dockworker with Conway Southern Truck Company (Conway). Defendant acknowledged that on October 15, 2003, plaintiff returned to work on a trial basis by filing a Form 28T. Since plaintiff's new job paid less than his average weekly wage, defendant paid plaintiff temporary partial disability compensation pursuant to the Form 28T. The job with Conway involved lifting and loading trucks. After approximately four weeks, plaintiff quit the job with Conway because the work increased pain in his back to the extent that he was unable to perform the lifting duties required by the job.
6. Within a week of quitting his job with Conway, plaintiff found a job with Auto Truck Transport (Transport) as a long-haul truck driver, delivering new trucks to Freightliner dealerships in the U.S. and Canada. On the long-haul trips, plaintiff had to pull over and stretch every 45 minutes to an hour. Plaintiff's back pain became worse, and his back did not stop hurting until he returned home. Prior to the start of the job with Transport, defendant did not file another Form 28T and plaintiff did not file a Form 28U. Plaintiff earned less wages than his pre-injury wages, and, therefore, defendant continued to pay plaintiff temporary partial disability during plaintiff's employment at Transport.
7. In January 2004 plaintiff had back pain that was so severe that he had to fly home for a few days of rest. Plaintiff returned to work for Transport as a long-haul driver and continued in that position until July 27, 2004, when he quit his job with Transport due to increased back pain. Plaintiff testified that he "wasn't able to drive anymore on account of my back and lifting all the heavy equipment . . . and the long distance driving was . . . anywhere from 500 to 3,000 miles. . . . it was just torture on my back." Plaintiff has not returned to work with any employer since July 27, 2004.
8. On August 4, 2004, plaintiff returned to Dr. Zuhosky with complaints of increased pain in his low back, right buttock and occasionally in the right leg. The right leg pain was new because in 2003, plaintiff complained of pain in his low back and left leg. Dr. Zuhosky ordered a functional capacity evaluation (FCE) and took plaintiff out of work until the FCE was complete. The FCE reflected that plaintiff had limited restrictions and that he could perform medium duty work.
9. On October 21, 2004, Dr. Zuhosky felt plaintiff was at maximum medical improvement and assigned plaintiff permanent restrictions that allowed him to lift 25 pounds frequently and 50 pounds occasionally. Also on October 21, 2004, Dr. Zuhosky discussed with plaintiff his ability to continue working as a truck driver in the trucking industry. Dr. Zuhosky recommended that plaintiff only drop off, pick up, and drive the truck, and specifically instructed plaintiff not to lift or bend. Even with these recommendations, plaintiff felt he would have significant pain within the limited duties. Plaintiff was unable to return to work for Transport with his restrictions. As of the date of the Deputy Commissioner's hearing, plaintiff was still considered an employee of Transport but was not earning any income.
10. Dr. Zuhosky testified at his deposition that plaintiff's "symptoms, ability to manage and continue with activities worsened" from 2003 to 2004. Dr. Zuhosky testified that upon review of the records, he did not see any compelling reason that there was any break in causation from plaintiff's original injury to his problems in 2004. Dr. Zuhosky stated,
 I didn't see any dramatic change in his symptoms to warrant any additional workup, and as such I don't feel that there was any discrete event that made us compelled to pursue any further workup to state that this wasn't his underlying pathology that was just flared up again in a slightly different way.
11. The Commission finds that plaintiff did not have a specific traumatic incident or injury by accident to his back while he worked for Conway or Transport and that his back condition after August 4, 2004 was causally related to his compensable injury by accident on January 1, 1999.
12. As the result of the compensable injury by accident, plaintiff was disabled from any employment from May 13, 2003 through October 14, 2003. Defendant paid temporary total disability compensation to plaintiff for this time period. After October 15, 2003, plaintiff was capable of some work and returned to work at less wages than he earned prior to the compensable injury by accident. Defendant paid plaintiff temporary partial disability compensation from October 15, 2003, until August 4, 2004, after which he was taken out of work again by Dr. Zuhosky. Following his release to return to work with restrictions on October 21, 2004, plaintiff's only efforts to find employment were to look for work with two trucking companies and to place a telephone call to his union. The Commission finds that plaintiff did not make reasonable efforts to find employment.
13. Although defendant made no effort to terminate plaintiff's compensation during the period from May 13, 2003 until August 4, 2004, defendant now seeks a credit for an alleged overpayment of compensation, arguing that plaintiff was not disabled or entitled to any compensation because he had been released to return to work with no restrictions.
14. The medical evidence of record does not show that Dr. Zuhosky assigned any permanent partial disability rating to the back that plaintiff may have sustained as a result of the compensable injury by accident.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident to his back arising out of and in the course of his employment on January 1, 1999. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted the compensability of plaintiff's injury by accident by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277
(2001).
3. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v.Perdue Farms, Inc., supra.
4. In the case at bar, plaintiff met his initial burden to show that he was disabled. Plaintiff was unable due to his compensable injury to return to his regular job or to any other employment from May 13, 2003 until October 14, 2003. From October 15, 2003, through August 4, 2004, plaintiff obtained and continued working in other employment at wages less than his pre-injury wages. Between August 5, 2004 and October 21, 2004, plaintiff was again temporarily totally disabled and unable to work in any employment. Plaintiff failed to prove that he was unable to work and earn wages after October 21, 2004, when Dr. Zuhosky released plaintiff to return to work with restrictions. Plaintiff did not make a reasonable effort to find employment and did not show that it was futile for him to seek employment because of other factors. He was capable of some work and no doctor took him out of work. Therefore, plaintiff did not meet his burden to prove that after October 21, 2004, he was unable to obtain employment after a reasonable effort or that it was futile for him to seek employment because of other factors. N.C. Gen. Stat. § 97-29;Russell v. Lowes Product Distribution, supra.
5. As the result of his compensable injury by accident on January 1, 1999, plaintiff was disabled and entitled to temporary total disability compensation at a rate of $560.00 per week from May 13, 2003 through October 14, 2003. N.C. Gen. Stat. § 97-29;Russell v. Lowes Product Distribution, supra. Defendant has already paid this compensation to plaintiff.
6. As the result of his compensable injury by accident on January 1, 1999, plaintiff was temporarily partially disabled and entitled to temporary partial disability compensation at the rate of two-thirds of the difference between the average weekly wages plaintiff earned prior to the injury by accident and the diminished wages he was able to earn from October 15, 2003 until August 4, 2004. N.C. Gen. Stat. § 97-30. Defendant has already paid this compensation to plaintiff.
7. As the result of his compensable injury by accident on January 1, 1999, plaintiff was again disabled and entitled to temporary total disability compensation at a rate of $560.00 per week from August 5, 2004 and continuing until October 21, 2004, after which plaintiff failed to show that he continued to be disabled from any employment. N.C. Gen. Stat. § 97-29; Russellv. Lowes Product Distribution, supra.
8. Assuming arguendo that plaintiff was not temporarily totally and partially disabled from May 13, 2003 until August 4, 2004, defendant's payment to plaintiff of temporary total disability and temporary partial disability for 15 months constitutes an award of the Commission pursuant to N.C. Gen. Stat. § 97-82. Therefore, defendant is not entitled to contest the validity of those payments unless defendant proves excusable neglect, mutual mistake, misrepresentation or fraud. Higgins v.Michael Powell Builders, 132 N.C. 720, 515 S.E.2d 17 (1999). Additionally, defendant did not provide any "newly discovered evidence" to support its claim for a credit following the award.Shockley v. Carin Studios Ltd., 149 N.C. App. 961,563 S.E.2d 207 (2002). Thus, even assuming arguendo that plaintiff was not temporarily totally and partially disabled, defendant would not be entitled to a credit for disability benefits paid to plaintiff from May 13, 2003 until August 4, 2004. N.C. Gen. Stat. § 97-42.
9. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury." Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 286, disc. review denied,343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident. Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699
(1970). The North Carolina Court of Appeals stated in Parsons v.Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Id. In Reinninger v. PrestigeFabricators, Inc., 136 N.C. App. 225, 523 S.E.2d 720 (1999), the Court of Appeals applied the Parsons presumption to a case in which the parties entered into a Form 21 Agreement for Compensation which was approved by the Commission and therefore constituted an "award" of the Commission, pursuant to N.C. Gen. Stat. § 97-82. The Court of Appeals has also held that an employer's payment of compensation pursuant to a Form 60, as in the case before us, is an award of the Commission and that theParsons presumption applies. Perez v. American Airlines,
___ N.C. App. ___, 620 S.E.2d 288 (2005).
10. In the case at bar, the greater weight of the medical evidence establishes that plaintiff's back conditions in 2004 are directly and causally related to his injury by accident on January 1, 1999. As such, the Parsons presumption applies and defendant failed to rebut the presumption that the medical treatment is directly related to the compensable injury. Parsonsv. Pantry, Inc., supra.
11. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his compensable injury, including his 2004 back problems, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-19;97-25.
12. The issue of plaintiff's permanent functional impairment, if any, to his back as a result of the compensable injury by accident is reserved for future determination. In the event that the compensation due for a rating is greater than the temporary partial disability compensation already paid plaintiff, plaintiff may elect the more munificient remedy between N.C. Gen. Stat. §§97-30 and 97-31. McLean v. Eaton Corp., 125 N.C. App. 391,481 S.E.2d 289 (1997). Upon such election, defendant shall be entitled to a credit against the rating for the temporary partial disability compensation already paid to plaintiff.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, defendant shall pay plaintiff temporary total disability compensation at the rate of $560.00 per week for the period May 13, 2003 through October 14, 2003; temporary partial disability compensation at the rate of two-thirds of the difference between the average weekly wages plaintiff earned prior to the injury by accident and the diminished wages he was able to earn from October 15, 2003 until August 4, 2004; and temporary total disability compensation at a rate of $560.00 per week from August 5, 2004 and continuing until October 21, 2004. Any amount that has accrued shall be paid in lump sum. Defendant has already paid plaintiff temporary total disability compensation from May 13, 2003 to October 14, 2003, and temporary partial disability compensation from October 15, 2003 until August 4, 2004, and is entitled to a credit for these payments.
2. Defendant shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident, including his 2004 back problems, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. The issue of any permanent partial disability to plaintiff's back is reserved for future determination.
5. Defendant shall pay the costs.
This 28th day of June 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER